UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

JANE DOE #5,

      Plaintiff,

v.                                      CIVIL ACTION NO.  5:21-cv-00282

RALEIGH GENERAL HOSPITAL, LLC
and DR. ZOUHAIR KABBARA; and
John Doe, individual and/or corporations,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Raleigh General Hospital, LLC's ("RGH") Motion to Dismiss [Doc. 4], filed May 7, 2021, and Plaintiff Jane Doe #5's Motion for Leave to File Amended Complaint [Doc. 46], filed September 7, 2021. The matters are ready for adjudication.

**I.**

Plaintiff Jane Doe #5 instituted this action against Defendants RGH and Zouhair Kabbara in state court on March 30, 2021. [Doc. 1 at 1]. Doe alleges she sought care from Kabbara in May 2019. [Doc. 1-1 at 6]. In June 2019, Kabbara hospitalized Doe at RGH. [*Id.*]. Kabbara told Doe that he would try to secure a private room for her. [*Id.*]. Doe alleges that while she was hospitalized, Kabbara sexually assaulted her by inserting his fingers into her vagina for several minutes. [*Id.*]. Kabbara then placed his fingers in Doe's mouth and told her to taste herself. [*Id.*].

Doe alleges that at all relevant times, RGH employed Kabbara or permitted him to practice medicine at its facility. [*Id.* at 5]. She also alleges RGH knows or should have known

Kabbara was forced to resign from Beckley Appalachian Regional Hospital due to allegations of misconduct and sexual harassment. [*Id.* at 6–7]. Doe asserts the following claims: intentional infliction of emotional distress; negligent hiring, supervision, and retention; civil assault; civil battery; civil conspiracy; and joint venture. [*See generally id.*].

Prior to filing this action, Doe provided to RGH on February 8, 2021, a pre-suit notice of claim letter from counsel and a screening certificate of merit completed by Dr. Erin Egan. [Doc. 4-2]. The notice of claim letter described Doe's theory of liability and the facts as alleged above. [*Id.* at 2–3]. However, although the notice of claim letter stated Dr. Egan's curriculum vitae ("CV") was enclosed, only the screening certificate of merit was included. [*Id.* at 3]. On February 16, RGH requested Dr. Egan's CV. [Doc. 8-8 at 2]. RGH's request included language stating that the request for Dr. Egan's CV did not waive RGH's right to object to the sufficiency of Doe's pre-suit notice of claim letter. [*Id.* (citing *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005))]. Doe provided RGH with Dr. Egan's CV that same day. [Docs. 8 at 3, 13 at 2].

On March 9, 2021, RGH sent Doe a *Hinchman* letter stating the pre-suit notice of claim was insufficient. [Doc. 4-5 at 1]. Specifically, RGH contended that Dr. Egan is not sufficiently qualified, nor was her affidavit sufficiently detailed under West Virginia Code Section 55-7B-6(b). [*Id.* at 4]. However, RGH's *Hinchman* letter was returned because it failed to include any address information. [Doc. 8-9 (returned envelope)]. RGH re-sent the letter on March 15, 2021. [Docs. 8 at 4, 13 at 2]. Doe's counsel responded through e-mail on March 17, 2021. [Doc. 8-10]. Doe's counsel objected that the *Hinchman* letter was untimely and "raises no legitimate criticisms of either our expert or our theories of liability." [*Id.*].

RGH removed on May 5, 2021. [Doc. 1 at 1]. RGH alleges complete diversity exists, and the amount in controversy requirement is satisfied. [*Id.* at 2–3]. On May 7, 2021, RGH

filed a Motion to Dismiss contending Doe failed to comply with the pre-suit notice requirements of the West Virginia Medical Professional Liability Act ("MPLA"). [Doc. 4 at 1].

RGH's Motion to Dismiss asserts Doe's pre-suit notice of claim letter fails to satisfy the jurisdictional prerequisite of the MPLA in the following three ways. First, Dr. Egan is not qualified to be an expert in the field of hospital credentialing or physician retention based on the education, training, and experience listed in her CV. [Doc. 5 at 7]. Second, Dr. Egan did not sufficiently explain the relevant standard of care or how RGH deviated from it. [*Id.* at 8–9]. Third, Dr. Egan did not properly list the information upon which she relied, and she could not have relied upon Kabbara's credentialing file because it is privileged. [*Id.* at 11–12]. RGH asserts that, even if Doe's inability to review Kabbara's credentialing file is fatal to her negligent credentialing action, only the West Virginia Legislature may correct the anomaly. [*Id.* at 12–13].

On May 21, 2021, Doe responded. [Doc. 8]. Doe first asserts RGH's *Hinchman* letter is untimely, as it was submitted more than 30 days after the submission of Doe's notice of claim letter. [*Id.* at 7]. Doe construes RGH's February 16, 2021, request for Dr. Egan's CV as a *Hinchman* letter and claims RGH's objections should be limited to the matters raised therein. [*Id.* at 8]. Doe also contends Dr. Egan's education, training, and experience qualify her as an expert in credentialing and physician retention. [*Id.* at 8–9 (citing Dr. Egan's affidavit and CV)]. Finally, Doe contends RGH's objections to the merits of her pre-suit notice are improper to consider in the context of a motion to dismiss. [*Id.* at 12].

In its untimely June 9, 2021, reply,[1] RGH asserts its *Hinchman* letter was timely

---

[1] *Local Rule of Civil Procedure* 7.1(a)(7) states "reply memoranda shall be filed and served on opposing counsel . . . within 7 days from the date of service of the memorandum in response to the motion." RGH never moved for an extension nor did it file a time stipulation between the parties. Nevertheless, the Court will consider RGH's arguments.

because Doe's pre-suit notice letter was incomplete until Dr. Egan's CV was provided on February 16, 2021. [Doc. 13 at 2]. RGH notes Doe received the *Hinchman* letter before the resulting March 18, 2021, deadline, as Doe replied to the *Hinchman* letter on March 17, 2021. [*Id.*]. Next, RGH contends *Hinchman* treated MPLA pre-suit notice as a procedural requirement. [*Id.* at 3]. But because the notice requirement is jurisdictional, RGH asserts the objection process in *Hinchman* "does not apply because the failure to comply with the MPLA is a jurisdictional defect which cannot be cured though amendment." [*Id.* at 4 (citing *State ex rel. Prime Care Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 341, 835 S.E.2d 579, 585 (2019))]. RGH then reasserts that the pre-suit notice letter provided on February 8, 2021, and supplemented on February 16, 2021, is insufficiently specific to meet the MPLA's requirements. [*Id.* at 7–9].

While this motion was pending, the United States Court of Appeals for the Fourth Circuit addressed the applicability of the pre-suit notice requirements of the West Virginia MPLA in federal court. *See Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021). The Court ordered the parties to brief the effect, if any, of this opinion upon the matters in controversy. [Doc. 16]. On July 29, 2021, Doe filed supplemental brief contending that *Pledger* holds pre-suit screening requirements are not a prerequisite to file an action in federal court. [Doc. at 2]. Kabbara never filed supplemental briefing addressing *Pledger*. [*See* Doc. 20 (Kabbara's joinder to and adopting the legal arguments in RGH's motion for extension of time)]. RGH's supplemental brief attempts to distinguish *Pledger* from the instant action. [Doc. 25].

First, RGH contends our Court of Appeals "did not address the issue of the MPLA's application to any common law medical malpractice claim against the non-governmental defendant." [*Id.* at 7]. RGH claims that "because *Pledger* declined to address the MPLA's application to analogous supplemental jurisdiction questions, its holding is not binding regarding

the pending motion to dismiss here." [*Id.* at 8]. Second, RGH contends the "growing consensus that certificate requirements like West Virginia's do not govern actions in federal court" observed in *Pledger* only applies to federal question actions. [*Id.* at 9]. As support, RGH cites opinions from the Third and Tenth Circuit Courts of Appeal. [*Id.* at 10]. RGH also contended the pre-suit notice requirements here are jurisdictional and thus can be distinguished from *Pledger*. [*Id.* at 14–15].

RGH contends the MPLA is an outcome determinative, substantive rule so it must be applied in diversity cases. [*Id.* at 20 (citing *Pledger*, 5 F.4th at 529 (Quattlebaum, J. dissenting))]. RGH asserts the application of the Federal Rules of Civil Procedure would "abridge, enlarge or modify [a] substantive right" and thus violate the Rules Enabling Act. [*Id.* at 18].

Perhaps in response to this argument, Doe filed a Motion for Leave to File Amended Complaint on September 7, 2021. [Doc. 46]. Doe seeks leave under *Federal Rule of Civil Procedure* 15(a)(2) to amend her complaint to allege the MPLA unconstitutionally violates the Fourteenth Amendment Due Process and the Equal Protection Clauses, the First Amendment freedom of petition, and the Seventh Amendment Preservation Clause. [Doc. 46-1 at 15, 19, 17, 21]. The amended complaint includes a request for a declaratory judgment under 28 U.S.C. § 2201 that the MPLA's pre-suit notice requirement and the health care provider credentialing privilege statute are unconstitutional. [*Id.* at 2].

## II.

The MPLA defines "medical professional liability" as any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient."

W. Va. Code § 55-7B-2(i). "Health care" includes "[t]he process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging and supervision of health care providers." W. Va. Code § 55-7B-2(e)(3).

   The MPLA includes a pre-suit notice requirement which prohibits any person from "fil[ing] a medical professional liability action against any health care provider without complying with the [pre-suit notice] provisions of this section." *State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 343, 835 S.E.2d 579, 587 (2019) (first brackets in original) (quoting W. Va. Code § 55-7B-6(a)). Pre-suit notice must include

> (A) The basis for the expert's familiarity with the applicable standard of care at issue; (B) the expert's qualifications; (C) the expert's opinion as to how the applicable standard of care was breached; (D) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death; and (E) a list of all medical records and other information reviewed by the expert executing the screening certificate of merit.

W. Va. Code § 55-7B-6(b). The Supreme Court of Appeals of West Virginia has held that "the pre-suit notice requirements contained in the MPLA are jurisdictional and that failure to provide such notice deprives a circuit court of subject matter jurisdiction." *Faircloth*, 242 W. Va. at 341, 835 S.E.2d at 585.

   Traditionally, West Virginia courts have held that "before a [healthcare provider] can challenge the legal sufficiency of a plaintiff's pre-suit notice of claim . . . the plaintiff must have been given written and specific notice of, and an opportunity to address and correct, the alleged defects and insufficiencies." *Hinchman*, 217 W. Va. at 386, 618 S.E.2d at 395. "The request for a more definite statement must identify with particularity each alleged insufficiency or defect in the notice and certificate and all specific details and information requested by the defendant." *Id.* "A claimant must be given a reasonable period of time, not to exceed thirty days, to reply to a healthcare provider's request for a more definite statement." *Id.* In determining if the

pre-suit notice was sufficient, courts "should apply [the MPLA] in light of the statutory purposes of preventing the making and filing of frivolous medical malpractice claims and lawsuits; and promoting the pre-suit resolution of non-frivolous medical malpractice claims." *Id.*

The Court directed supplemental briefing here, however, inasmuch as our Court of Appeals appears to have now held that "state-law certification requirements like West Virginia's are inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in federal court." *Pledger*, 5 F.4th at 514. Our Court of Appeals found "that it is impossible to reconcile certificate requirements like West Virginia's with the requirements of the Federal Rules of Civil Procedure." *Id.* at 519–20 (noting a conflict between the MPLA pre-suit notice requirement and Rules 8, 9, 12, and 11). *Pledger* thus holds that "the Federal Rules, not the MPLA, govern [plaintiff's] claim in federal court." *Id.* at 521.

Importantly, the decision in *Pledger* rejected the argument that "the MPLA should govern because it is 'substantive'" *Id.* The court explained, "if a valid *Federal Rule* answers the question at issue . . . [it] governs." *Id.* (emphasis in original) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). The decision in *Pledger* also determined that the MPLA's pre-suit notice requirement is procedural, as "West Virginia's certificate requirement appears in a statutory section governing 'prerequisites' and 'procedures' for filing suit, not the section outlining the elements of proof for a claim." *Id.* at 523 (citing W. Va. Code § 55-7B-6).

### III.

The core question is whether the MPLA requires dismissal of Doe's complaint. Even absent the intervening decision in *Pledger*, the answer is no. Doe's pre-suit notice of claim

letter and Dr. Egan's affidavit -- supplemented with her CV -- satisfy each element.

First, the affidavit must state the basis for the expert's familiarity with the applicable standard of care at issue. W. Va. Code § 55-7B-6(b)(A). Dr. Egan's affidavit does so, based upon the CV furnished to RGH on February 16, 2021. Specifically, Dr. Egan states she is an expert in hospital credentialing and physician retention. [Doc. 4-3 at 5]. Dr. Egan's affidavit gives specifics as to her education. [*Id.*]. Her CV identifies her as an adjunct faculty member at the University of Denver Sturm College of Law. [Doc. 4-4 at 1]. Her CV also lists her work on ethics and risk management committees. [*Id.* at 2–3, 4–5]. RGH's citations to state court cases from Texas, Illinois, Wisconsin, and Montana are unavailing and inapposite. [*See* Doc. 5 at 7]. Dr. Egan's affidavit states the basis for her familiarity with the standard of care at issue.

Second, the screening certificate of merit must state the expert's qualifications. W. Va. Code § 55-7B-6(b)(B). Dr. Egan's affidavit does so, in light of the aforementioned CV. The most relevant qualifications are those the Court referenced immediately above. But Dr. Egan's CV also provides a detailed listing of her education, professional society affiliations, and medical employment experience. [*See generally* Docs. 4-4]. The MPLA qualification requirement is satisfied.

Third, the screening certificate of merit must state the expert's opinion as to how the applicable standard of care was breached. W. Va. Code § 55-7B-6(b)(C). Dr. Egan's affidavit does so in two places. First, Dr. Egan states that Kabbara breached the standard of care by "digitally penetrat[ing] Jane Doe #5 without consent when such penetration was neither medically indicated nor part of any course of medical treatment." [Doc. 4-3 at 5]. Second, Dr. Egan states RGH deviated from the standard of care "by credentialing, recredentialing, and allowing Zouhair Kabbara to continue the practice of medicine at [its] facility despite a disproportionate number of

complaints lodged against Zouhair Kabbara and despite a prevalent pattern and practice of improper behavior by Zouhair Kabbara." [*Id.* at 5–6]. Dr. Egan's affidavit clearly stated her opinion as to how the standard of care was breached.

Fourth, the screening certificate of merit must state the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. W. Va. Code § 55-7B-6(b)(D). Dr. Egan's affidavit does so in two places. In the first place, Dr. Egan states Kabbara's medically unnecessary digital penetration of Doe "caused [her] severe distress." [Doc. 4-3 at 5]. In the second place, Dr. Egan states RGH's continued credentialing of Kabbara despite his ongoing improper behavior "caused severe physical injury and severe distress" to Doe. [*Id.* at 5–6]. Dr. Egan's affidavit clearly tied her breach opinion to Doe's injury.

Fifth, the screening certificate of merit must list all medical records and other information reviewed by the expert. W. Va. Code § 55-7B-6(b)(E). Dr. Egan's affidavit does so. It states that Dr. Egan "reviewed the information provided to [her] pertinent to the credentialing of Zouhair Kabbara, complaints made against Zouhair Kabbara during his tenure at Raleigh General Hospital, and Jane Doe #5's allegations with respect to Zouhair Kabbara." [Doc. 4-3 at 5]. Both Doe and RGH identify exactly the information Dr. Egan relies on to arrive at her conclusions. [Docs. 8 at 11–12, 13 at 9]. Arguments as to whether Dr. Egan's review was based on information sufficient to support her conclusion are ultimately questions for the trier of fact. RGH adds that Dr. Egan's affidavit must be insufficient inasmuch as she failed to review Dr. Kabbara's privileged and undiscoverable credentialing file. [Doc. 5 at 11–12]. The argument is both circular and fallacious and need not be addressed. In sum, Dr. Egan's affidavit listed the records and information upon which she relied. Doe's pre-suit notice is thus sufficient under the MPLA.

Moreover, even if Doe's pre-suit notice were insufficient, *Pledger* unmistakeably

9

provides that the MPLA's pre-suit notice requirement does not require dismissal of this action. As noted, our Court of Appeals there held that the pre-suit notice requirements of the MPLA conflict with -- and are thus displaced by -- the Federal Rules of Civil Procedure. *Pledger*, 5 F.4th at 514. RGH contends *Pledger* is distinguishable because it involved an action brought under the FTCA. [Doc. 25 at 7]. Simply put, the conflict between the pre-suit notice and the Federal Rules of Civil Procedure does not dematerialize in diversity actions. *Pledger* applies just the same.

The remainder of RGH's attempts to undermine *Pledger*'s holding are similarly flawed. Each argument reduces to RGH coaxing the Court to ignore or misapply binding precedent based upon the "entertaining and persuasive" dissenting opinion. [Doc. 25 at 5 (referencing *Pledger*, 5 F.4th at 527 (Quattlebaum, J., dissenting))]. That approach would, of course, introduce error into the case.

In sum, the decision in *Pledger* directly addresses the present controversy. Even if the Court had found Doe's pre-suit notice insufficient, *Pledger* would prevent the Court from dismissing the action inasmuch as the Federal Rules of Civil Procedure exclusively address pleading requirements in federal court.

## IV.

Based on the foregoing discussion, the Court **DENIES** RGH's Motion to Dismiss [**Doc. 4**] and likewise **DENIES** without prejudice Doe's Motion for Leave to File Amended Complaint. Respecting the latter, Doe complied with the MPLA pre-suit requirements, and the foregoing discussion appears to meet the concerns that resulted in the proposed amended pleading. If the Court has misunderstood the design behind the proposed amended pleading, Doe may refile the request with appropriate briefing.

The Court directs the Clerk to transmit a copy of this Memorandum Opinion and Order to counsel of record and to any unrepresented party.

ENTER: September 30, 2021

Frank W. Volk
United States District Judge